IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| KRISTINA CARTER, | ) | |
| | ) | |
| Plaintiff, | ) | 8:07CV235 |
| | ) | |
| vs. | ) | ORDER |
| | ) | |
| ALLIED INSURANCE, | ) | |
| a NATIONWIDE COMPANY, | ) | |
| | ) | |
| Defendant. | ) | |

This matter is before the court on the defendant's Motion for Summary Judgment (Filing No. 25).¹ The defendant filed a brief (Filing No. 26) and an index of evidence (Filing No. 27) in support of the motion. The plaintiff filed a Motion for Denial of Defendant's Summary Judgment Motion (Filing No. 28) with a brief and index of evidence attached. The plaintiff filed the evidence separately (Filing Nos. 30-34). The defendant did not file a reply. For the reasons stated below, the court concludes the defendant's motion should be granted.

**INTRODUCTION**

This case arises from the plaintiff's termination from employment on April 14, 2006. The plaintiff alleges, that after she developed carpal tunnel and cubital tunnel syndrome, she was terminated in violation of Title I of the Americans with Disabilities Act (ADA), 42 U.S.C. § 12101 *et seq*. **See** Filing No. 22 - Amended Complaint. The plaintiff also alleges the defendant retaliated against her by terminating her employment after she filed a complaint with the Nebraska Equal Opportunity Commission (NEOC) and the Equal Employment Opportunity Commission (EEOC), in violation of 42 U.S.C. § 2000e-3(a). *Id.* The defendant denies discriminatory or retaliatory conduct. **See** Filing No. 23 - Answer.

---

¹As a convenience, this document contains certain cross-document hyperlinks to documents previously filed in this case. This document also contains links to the Nebraska local rules and legal citation from the federal reporters. The hyperlinked documents appear in blue unlined text. Except with regard to the local rules, access to the hyperlinked material is subject to fees pursuant to user agreements. The hyperlinks may be accessed without PACER fees by use of the public computer terminal in the Clerk's office.

The defendant seeks summary judgment on each of the plaintiff's claims. The defendant contends the plaintiff was terminated because she could not perform the essential functions of her job, including continuous keyboarding, with or without reasonable accommodation. Additionally, the defendant contends the plaintiff is not disabled or regarded as disabled. Finally, the defendant asserts it is entitled to summary judgment on the plaintiff's retaliation claim because it was not aware of the NEOC/EEOC complaint until after the plaintiff's termination.

The plaintiff opposes summary judgment claiming she was impaired, by a workplace injury, in the major life activities of sleeping and sitting for extended periods of time. **See** Filing No. 28 - Brief p. 6-8. Additionally, the plaintiff argues her "regarded as" claim is not mutually exclusive of her disability claim. *Id*. p. 8-9. The plaintiff asserts the defendant's stated reason for her termination – failure to respond to requests for medical information – is pretext. *Id*. p. 10-12. The plaintiff contends the retaliation claim should not be dismissed because the plaintiff was terminated after complaining about a co-worker's harassing behavior. *Id*. p. 12-14.

The court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331, as the matter arises under the Constitution and laws of the United States as a federal question. The undersigned magistrate judge is specially designated to exercise jurisdiction over this matter, pursuant to 28 U.S.C. § 636 and after the consent of the parties. **See** Filing No. 12.

### UNCONTROVERTED FACTS[2]

1. The plaintiff was employed by Nationwide Mutual Insurance Company (Nationwide) in the fall of 2004 as an underwriter trainee, and was subsequently promoted to the position of personal lines insurance underwriter. **See** Filing No. 27 Ex. 1 - Carter Dep. 22:12-17, 23:14-19, 29:20-24; Ex. 2 -Brown Letter dated Sept. 24, 2004.

---

[2]The plaintiff did not object to any of the defendant's statements of fact, either formally or by way of argument. The plaintiff did file a separate list, which the defendant did not oppose. The uncontroverted facts listed in this order are based on the evidence before the court and those facts alleged by the parties. Where the facts are uncontroverted, they are deemed admitted by the opposing party. **See** NECivR 56.1(b)(1).

2.      One of the essential functions of the plaintiff's job duties as a personal lines underwriter was the continuous use of the keyboard. *Id*. Ex. 1 - Carter Dep. 96:7-12. A typical day involved eight hours keying in data, or more if the plaintiff worked overtime. *Id*. at 30: 10-20. The plaintiff's other duties included inputting, viewing policies, entering and remarking polices, and evaluating risk factors for polices. *Id*. at 30: 1-10.

3.      In early September 2005, when the plaintiff complained of pain in her left wrist, an occupational health nurse evaluated the plaintiff's work station and recommended certain ergonomic changes which were implemented. *Id*. Ex. 3 - Belden Email dated Sept. 1, 2005; Ex. 4 - Hohlen Email; Ex. 5 - Belden Email dated Sept. 6, 2005). The plaintiff was satisfied with the actions Nationwide took to address her complaints of wrist pain. *Id*. Ex. 1 - Carter Dep. 99:19-100:4.

4.      The plaintiff continued to complain about pain, however, and she was evaluated by a specialist, Dr. Dolf R. Ichtertz, who released the plaintiff to work with temporary restrictions, which included limited use of the keyboard. *Id.* Ex. 6 - Ichtertz Temporary Restrictions; Ex. 1 - Carter Dep. 31:1-32:15. Dr. Ichtertz diagnosed the plaintiff with carpal tunnel and cubital tunnel syndrome of the left wrist. **See** Filing No. 22 - Amended Complaint ¶ 2; Filing No. 27 Ex. 1 - Carter Dep. 36:2-9 and Ex. 6 - Ichtertz Temporary Restrictions. Although Dr. Ichtertz released Carter to return to work, she chose not to return to work from September 26, 2005, through October 14, 2005, because she felt her condition had worsened. *Id*. Ex. 1 - Carter Dep. 91:25-92:11; **see also** *Id*. Ex. 6 - Ichtertz Temporary Restrictions.

5.      When the plaintiff returned to work after October 14, 2005, Nationwide found temporary jobs for her in an effort to comply with the temporary restrictions imposed on her by Dr. Ichtertz, which restrictions involved only light keying. *Id*. Ex. 1 - Carter Dep. 31:19-32:15, 102:1-11; Ex. 6 - Ichtertz Temporary Restrictions; Filing No. 23 - Answer ¶ 6. For instance, Nationwide asked the plaintiff to assist with special projects and other assignments, which satisfied the temporary restrictions imposed upon the plaintiff. **See** Filing No. 23 - Answer ¶ 6; Filing No. 27 Ex. 1 - Carter Dep. 31:1-32:15, 102:1-11.

6.      During the period in which the temporary restrictions were in effect, the plaintiff also asked to be allowed to work from home. Nationwide did not approve this

request because there were no appropriate work assignments consistent with the plaintiff's restrictions, which would have allowed her to work at home.  The plaintiff acknowledges that her complaint is not based on the failure of Nationwide to approve her request to work from home.  **See** Filing No. 27 Ex. 1 - Carter Dep. 106:4-11.

7.     On October 24, 2005, the plaintiff lodged an internal complaint against Tom Dyer, a Nationwide employee and the plaintiff's case management nurse, for harassment. **See** Filing No. 32 Ex. 4 - Interview Transcript.  The plaintiff alleged that on September 30, 2005, Mr. Dyer refused to accept a doctor's note for time off.  Additionally, the plaintiff stated she thought Mr. Dyer was not to contact her anymore, but he badgered her into going back to work.  *Id.*  The plaintiff stated Mr. Dyer treated her differently by refusing the doctor's note and taking "a hard line from the very beginning. . . . It's very obvious that he had a problem with me from the very beginning."  *Id.*

8.     The plaintiff filed a workers' compensation claim against the defendant for her injuries related to the carpal tunnel and cubital tunnel syndrome.  The workers compensation claim was settled between the parties.  **See** Filing No. 27 Ex. 1 - Carter Dep. 8:21 to 9:12.  On March 14, 2006, the plaintiff's counsel sent a letter to Tom Dyer, notifying Nationwide it was "not to have any further contact whatsoever with Ms. Carter" because she was represented by counsel related to a workers' compensation claim and "a lawsuit." **See** Filing No. 31 Ex. 5 - Mar. 14, 2006 Letter.

9.     On March 28, 2006, the plaintiff was released from care with permanent restrictions outlined by Dr. Jack McCarthy.  **See** *id.* Ex. 1 - Carter Dep. 31:10-18, 40:23-41:17; Filing No. 30 Ex. 2 - Permanent Restrictions.  These permanent restrictions forbade the plaintiff from keying any more than fifteen minutes per hour, prohibited the plaintiff from doing any job with continuous keying, and stated the plaintiff "will not be able to return to job with continuous keying."  Filing No. 30 Ex. 2 - Permanent Restrictions; **see** Filing No. 27 Ex. 1 - Carter Dep. 31:10-18, 40:23-41:17.  The plaintiff was also to avoid lifting over five pounds, except on an occasional basis.  Filing No. 30 Ex. 2 - Permanent Restrictions. Dr. McCarthy also noted the plaintiff's impairment caused her pain and tingling while in a resting position and woke her up at night.  *Id.* p. 2.

10. Because all available permanent positions at that time involved continuous keying and because the permanent restrictions were written so broadly, on March 31, 2006, Nationwide asked for clarification from the plaintiff and her physician as to what job duties the plaintiff would be able to perform. **See** Filing No. 27 Ex. 9 - Caldwell Emails; Ex. 1 - Carter Dep. 97:1-25; 98:1-8; 98:9-99:1. The plaintiff gave the request for more information to her legal counsel and/or referred Nationwide to her legal counsel. **See *Id.*** Ex. 1 - Carter Dep. 97:1-25; 98:1-8; 98:9-99:1; Ex. 9 - Caldwell Emails. Nationwide never received any additional clarifying information from the plaintiff, her counsel, or her physician. **See *Id.*** Ex. 10 - Termination Letter.

11. Because no additional information clarifying these restrictions was provided to Nationwide, Nationwide read the restrictions broadly. *Id.* Ex. 10 - Termination Letter. Nationwide terminated the plaintiff's employment on April 14, 2006, stating there were no permanent positions then available which did not involve the essential function of continuous keying. *Id.*; **see also** Ex. 1 - Carter Dep. 34:17 to 35:18.

12. On April 4. 2006, the plaintiff filed a Charge of Discrimination with the NEOC and the EEOC (EEOC Charge), by participating in an initial intake interview. *Id.* Ex. 1 - Carter Dep. 112. The EEOC Charge states the plaintiff has a disability, which the defendant improperly refused to accommodate. The EEOC Charge notes the latest discrimination took place on April 13, 2006, and the plaintiff signed the EEOC Charge before a notary public on April 28, 2006. *Id.* Ex. 11 - EEOC Charge.

13. The EEOC Charge in evidence was stamped "received" on May 1, 2006, and is a copy of the original business record received by Nationwide. *Id.* and Ex. 12 - Richards Aff. ¶11.

14. On March 1, 2007, the NEOC issued a "no reasonable cause" finding. **See** Filing No. 34 Ex. 12 - Commission Determination. On April 11, 2007, the plaintiff received a right to sue letter from the EEOC. **See *Id.*** Ex. 13 - Right to Sue Letter.

**LEGAL STANDARD**

Pursuant to the Federal Rules of Civil Procedure, summary judgment is appropriate when, viewing the facts and inferences in the light most favorable to the nonmoving party, "there is no genuine issue as to any material fact and . . . the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); **see** *Nat'l Am. Ins. Co. v. W & G, Inc.*, 439 F.3d 943, 945 (8th Cir. 2006). When making this determination, a court's function is not to make credibility determinations and weigh evidence, or to attempt to determine the truth of the matter; instead, a court must "determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). A court must "look to the substantive law to determine whether an element is essential to a case, and '[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.'" *Chambers v. Metro. Prop. & Cas. Ins. Co.*, 351 F.3d 848, 853 (8th Cir. 2003) (**quoting** *Anderson*, 477 U.S. at 248 ). "One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses, and [the rule] should be interpreted in a way that allows it to accomplish this purpose." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986).

Additionally, Rule 56(e)(2) provides:

> When a motion for summary judgment is properly made and supported, an opposing party may not rely merely on allegations or denials in its own pleading; rather, its response must--by affidavits or as otherwise provided in this rule--set out specific facts showing a genuine issue for trial. If the opposing party does not so respond, summary judgment should, if appropriate, be entered against that party.

**See** Fed. R. Civ. P. 56(e)(2). A party seeking summary judgment bears the burden of informing a court "of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323 (**quoting** Fed. R. Civ. P. 56(c)); *Rodgers v. City of Des Moines*, 435 F.3d 904, 908 (8th Cir. 2006). In the face of a properly supported motion, the burden then shifts to the nonmoving party to "set out specific facts showing a genuine issue

for trial." Fed. R. Civ. P. 56(e)(2); *Murphy v. Missouri Dep't of Corr.*, 372 F.3d 979, 982 (8th Cir. 2004). A motion for summary judgment places an affirmative burden on the non-moving party to go beyond the pleadings and, by affidavit or otherwise, produce specific facts that show that there is a genuine issue for trial. **See** Fed. R. Civ. P. 56(e); *Janis v. Biesheuvel*, 428 F.3d 795, 799 (8th Cir. 2005).

Under this court's local rules:

> The moving party shall set forth in the brief in support of the motion for summary judgment a separate statement of material facts as to which the moving party contends there is no genuine issue to be tried and that entitle the moving party to judgment as a matter of law.

**See** NECivR 56.1(a)(1).

Additionally:

> The party opposing a motion for summary judgment shall include in its brief a concise response to the moving party's statement of material facts. The response shall address each numbered paragraph in the movant's statement and, in the case of any disagreement, contain pinpoint references to affidavits, pleadings, discovery responses, deposition testimony (by page and line), or other materials upon which the opposing party relies. <u>Properly referenced material facts in the movant's statement will be deemed admitted unless controverted by the opposing party's response</u>.

**See** NECivR 56.1(b)(1) (emphasis in original).

## ANALYSIS

### A.   Disability Discrimination

The ADA prohibits employers from discriminating against a disabled individual qualified for a job because of the disability of such individual. 42 U.S.C. § 12112(a). "To establish a prima facie case of disability discrimination, a plaintiff must show: (1) that she was disabled, (2) that she was qualified to do the essential job function with or without reasonable accommodation, and (3) that she suffered an adverse action due to her disability." *Buboltz v. Residential Advantages, Inc.*, 523 F.3d 864, 868 (8th Cir. 2008). The defendant disputes the plaintiff had a disability. Additionally, the defendant disputes

7

whether the plaintiff can establish she could perform the essential functions of her job with or without a reasonable accommodation.

   **1.   Disability**

The plaintiff argues she is disabled because she is substantially impaired in the major life activities of sitting for extended periods of time and sleeping.  In the alternative, the plaintiff argues Nationwide regarded her as disabled.

Under the ADA:

> The term "disability" means, with respect to an individual--
> (A)   a physical or mental impairment that substantially limits one or more of the major life activities of such individual;
> (B)   a record of such an impairment; or
> (C)   being regarded as having such an impairment.

42 U.S.C. § 12102(2)(A).

A finding of disability depends on "whether the net effect of the impairment is to prevent or severely restrict the plaintiff from doing the set of activities that are 'of central importance to most people's daily lives.'" *Nuzum v. Ozark Auto. Distribs., Inc.*, 432 F.3d 839, 846 (8th Cir. 2005) (**quoting** *Toyota Motor Mfg., Ky., Inc. v. Williams*, 534 U.S. 184, 198 (2002)).

The plaintiff describes her permanent restrictions as:  "no continuous keying for more than fifteen (15) minutes, restrictions on continuously sitting in one position, no lifting objects weighing more than five (5) pounds."  **See** Filing No. 28-2 Brief p. 7.  Additionally, the plaintiff argues the evidence suggests her injuries cause her to have "trouble sleeping."  *Id.*  The undisputed medical restriction to the plaintiff's use of a keyboard does not rise to the level of a substantial impairment of a major life activity.  **See** *Thornton v. McClatchy Newspapers, Inc.*, 292 F.3d 1045, 1046 (9th Cir. 2002).  Furthermore, a diagnosis of carpal tunnel syndrome and cubital tunnel syndrome with permanent keying and lifting restrictions, as described here, does not constitute a substantial limitation in the major life activity of working.  **See** *Gutridge v. Clure*, 153 F.3d 898, 901 (8th Cir. 1998).  The plaintiff does not argue she is impaired in her ability to work.  Moreover, the plaintiff does not argue

8

her lifting restriction either sustains her burden or causes her a disability. **See** *Id.* (noting "a general lifting restriction imposed by a physician, without more, is insufficient to constitute a disability within the meaning of the ADA").

Sitting is considered a major life activity. *Fjellestad v. Pizza Hut of Am., Inc.*, 188 F.3d 944, 948 (8th Cir. 1999). "'Sleeping' is also recognized by some courts as a "major life activity.'" *Nuzum*, 432 F.3d at 846 (assuming, for the sake of argument, sleeping was a major life activity). The plaintiff contends she has met her burden of proof by providing evidence "she is unable to sit for extended periods of time and to sleep as a result of her injuries." **See** Filing No. 28-2 Brief p. 7. The evidence provided by the plaintiff, however does not sustain the plaintiff's burden or create a disputed material issue of fact about whether the plaintiff is disabled. Specifically, the identity of impaired major life activities does not end the analysis.

"Once a major life activity has been identified, the ADA plaintiff must show that his ability to perform the activity is 'substantially limited' by the impairment. 'Substantially limited' means limited 'considerabl[y] or to a large degree.'" *Nuzum*, 432 F.3d at 846 (**quoting** *Williams*, 534 U.S. at 196). "Substantially limited" is defined as follows:

> (i) Unable to perform a major life activity that the average person in the general population can perform; or
> (ii) Significantly restricted as to the condition, manner or duration under which an individual can perform a particular major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity.

29 C.F.R. § 1630.2(j)(1). The court must also "assess the substantiality of the limitation by examining the nature, severity, duration, and impact of the 'impairment,' § 1630.2(j)(2), thus diverting attention to some extent from the functional limitations to the individual's underlying physical or mental impairment." *Nuzum*, 432 F.3d at 846-47 (citing EEOC regulations). In sum,

> To prove disability, plaintiffs must submit more than just evidence of a medical diagnosis of an impairment. "Instead, the ADA requires those 'claiming the Act's protection . . . to prove a disability by offering evidence that the extent of the

9

> limitation [caused by their impairment] in terms of their own experience . . . is substantial.'"

*Philip v. Ford Motor Co.*, 328 F.3d 1020, 1024-25 (8th Cir. 2003) (**quoting *Williams***, 534 U.S. at 198) (alteration in original).

Here, the plaintiff describes her restrictions on sitting such that taking frequent breaks from sitting relieved the discomfort caused by her carpal tunnel or cubital tunnel syndrome by allowing her to rest her arm.  **See** Filing No. 27 Ex. 1 - Carter Dep. 39-40. The plaintiff did not suffer any injury to her back or other independent injury which prevented sitting.  *Id.*  In fact, the plaintiff confirmed she could remain sitting if she changed the positions of her arm from the bent position associated with keyboarding.  *Id.*  The plaintiff provides no additional evidence about problems associated with sleeping.

By the plaintiff's own descriptions, she has admitted her impairment does not prevent her from sitting provided that she takes breaks.  Her testimony also indicated she is fully capable of mitigating the effects of her impairment by taking breaks or changing the position of her arms.  **See** *Gretillat v. Care Initiatives*, 481 F.3d 649, 654-55 (8th Cir. 2007) (taking into consideration mitigating factors).  Similarly, the plaintiff has failed to show her "sleeping patterns are significantly different from the rest of the population's." **See** *Nuzum*, 432 F.3d at 846 (holding it insufficient where plaintiff showed that due to pain from his arm, his sleep was limited to two and a half hours at a time, for a total of four to five hours' sleep per night").  Thus, the plaintiff's restrictions associated with sitting and sleeping, either individually or when considered with all of her restrictions, do not render her disabled.

Although the plaintiff is correct that the court is not required to automatically dismiss the plaintiff's "regarded as disabled" claim because it was plead in the alternative, the claim necessarily fails for lack of proof.  The plaintiff has failed to make any showing the defendant regarded her as disabled.  The evidence before the court shows only that the plaintiff was permanently restricted, by virtue of her injury, from continuously typing.  The plaintiff's previous position required continuous typing.  Further, the plaintiff fails to provide any evidence positions were available for which she was qualified and which met her restrictions or could be performed with or without an accommodation.  **See** *McPherson v.*

*O'Reilly Auto., Inc.*, 491 F.3d 726 (8th Cir. 2007). Accordingly, the defendant is entitled to summary judgment as a matter of law because the plaintiff failed to show she was either disabled or regarded as disabled.

### 2. Essential Functions

It is undisputed the plaintiff could not perform the essential functions of her job, with or without reasonable accommodations. See *Heaser v. Toro Co.*, 247 F.3d 826, 831 (8th Cir. 2001) (listing factors for establishing an essential function). The plaintiff was unable to stay in a position requiring continuous keying, yet her previous position required, as an essential function, nearly continuous keying. See Filing No. 27 Ex. 1 - Carter Dep. 78, 96.

The plaintiff argues the defendant failed to reasonably accommodate the plaintiff by terminating her employment only two weeks after requesting clarification of her medical condition. See Filing No. 28-2 Brief p. 9. The plaintiff contends the defendant acted in bad faith by failing to meet its burden of engaging in an interactive process. *Id.* Similarly, the plaintiff argues the defendant's stated reason for the termination, the plaintiff's failure to provide additional information, is pretext for discrimination. *Id.* p. 10-12.

The plaintiff urges the court to apply a modified burden-shifting approach, appropriate if a plaintiff alleges an employer failed to make a reasonable accommodation. *Fenney v. Dakota, Minn. & Eastern R. Co.*, 327 F.3d 707, 712 (8th Cir. 2003). A reasonable accommodation may be required if the plaintiff shows, she is a "qualified individual" within the meaning of the ADA. *Id.* Such employee must "(1) possess the requisite skill, education, experience, and training for his position, and (2) be able to perform the essential job functions, with or without reasonable accommodation." *Id.* (quotation omitted).

> In cases where the employee claims that he is able to perform the essential functions of the job with a reasonable accommodation, the employee must only make a 'facial showing that a reasonable accommodation is possible. When the employee has made that facial showing, "[t]he burden then shifts to the employer to show that it is unable to accommodate the employee."

*Brannon v. Luco Mop Co.*, 521 F.3d 843, 848 (8th Cir. 2008).

The court need not reach the plaintiff's contentions since the plaintiff did not meet her initial burdens. *Id.* ("Under the modified burden-shifting approach, the employee "must first make a facial showing that he has an ADA disability.'"). However, here the plaintiff does not suggest any possible accommodation. Further, the plaintiff apparently spurned the defendant's attempts to have an interactive discussion about the possibilities of any accommodation or job placement. Ultimately, "reassignment to a vacant position can be a reasonable accommodation under the ADA, [but] it is not necessarily required." *Burchett v. Target Corp.*, 340 F.3d 510, 517 (8th Cir. 2003) (**citing** 42 U.S.C. § 12111(9)). There is no evidence before the court reassignment would have been a possible accommodation under the circumstances.

Although, the defendant waited only a short time between the request for clarification of the permanent job restrictions and termination, the plaintiff had flatly refused to discuss accommodations and no clarifying information was forthcoming. Moreover, the defendant had provided the plaintiff with ongoing employment in various temporary positions for six months. The plaintiff fails to show additional time, either time off from her employment or time to gather clarifying information, would have enabled her or the defendant to establish a reasonable accommodation. **See** *Brannon*, 521 F.3d at 849; **see also** *Alexander v. Northland Inn*, 321 F.3d 723, 728 (8th Cir. 2003) (affirming district court's grant of summary judgment where employee failed to meet her prima facie burden of showing that a reasonable accommodation was available that would not have placed an undue burden on the employer; recognizing that employee's post-termination request for a reasonable accommodation was "too little, too late"; and that the employer was not per se liable for failing to engage in the interactive process). Under the circumstances, the plaintiff has failed to make a facial showing that she was a "qualified individual," and summary judgment will be granted in favor of the defendant.

**B.     Retaliation**

The plaintiff's complaint alleges "Defendant's termination of Plaintiff's employment was retaliation in violation of 42 U.S.C. §2000e 3(a)." **See** Filing No. 22 - Amended Complaint ¶ 15. During her deposition, the plaintiff explained she was retaliated against

for filing an EEOC charge on April 4, 2006. **See** Filing No. 27 Ex. 1 - Carter Dep. 111-112. However, since it is clear the defendant did not have knowledge of the EEOC Charge until after the plaintiff's termination, the plaintiff now asserts the retaliation was for the October 24, 2005 internal compliant. **See** Filing No. 28-2 Brief p. 12.

> Pursuant to 42 U.S.C. §2000e-3(a):
>> It shall be an unlawful employment practice for an employer to discriminate against any of his employees . . . to discriminate against any individual, . . . because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter.

Assuming the plaintiff's conduct in complaining about Mr. Dyer constitutes protected activity under the statute, the plaintiff fails to make any showing there is a causal link between such conduct and her termination. **See** *Van Horn v. Best Buy Stores, L.P.*, No. 07-2677, 2008 WL 2151692, at *3-4 (8th Cir. May 23, 2008) ("Title VII prohibits an employer from discriminating against an employee because he or she "has opposed any practice" made unlawful by Title VII."). "To make out a retaliation claim, the plaintiff must show that the protected conduct was a 'determinative-not merely motivating-factor' in the employer's adverse employment decision." *Id.* at * 5 (**citing** *Carrington v. City of Des Moines, Iowa*, 481 F.3d 1046, 1053 (8th Cir. 2007). The court must consider whether the evidence supports an inference that the plaintiff's October 2005 complaints were a "determining factor" in the decision to terminate her employment. The plaintiff provides no evidence or argument there is any causal link whatsoever between the October 2005 complaints and her termination. Any suggestion of a causal link based on timing is insufficient to carry the plaintiff's burden. **See** *Van Horn*, 2008 WL 2151692, at *7 (noting an interval of two months is too long to support an inference of retaliation). Here, there are no allegations to support any contention that the plaintiff's termination was even motivated by the five-month old complaints against a co-worker. Therefore, the plaintiff fails to sustain her burden of alleging facts sufficient to make out a prima facie case of retaliation. Accordingly, the plaintiff's retaliation claim must fail. Upon consideration,

**IT IS ORDERED:**

1. The defendant's Motion for Summary Judgment (Filing No. 25) is granted.

2. The plaintiff's Motion for Denial of Defendant's Summary Judgment Motion (Filing No. 28) is denied.

3. Pursuant to Fed. R. Civ. P. 58, a separate judgment will be entered on this date in accordance with this Order.

Dated this 29th day of May, 2008.

                                            BY THE COURT:

                                            s/Thomas D. Thalken
                                            United States Magistrate Judge